## In re ADVERTISING & MARKETING DEVELOPMENT, INC.

### Appeal No. 87–1092.

United States Court of Appeals, Federal Circuit.

June 5, 1987.

Donald A. Kaul, Brownstein Zeidman and Schomer, Washington, D.C., argued for appellant.

Albin F. Drost, Asst. Solicitor, Office of Solicitor, Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Solicitor, and Fred E. McKelvey, Deputy Solicitor.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and SMITH, Circuit Judge.

EDWARD S. SMITH, Circuit Judge.

Advertising & Marketing Development, Inc. (A & M), appeals from the final decision of the Patent and Trademark Office Trademark Trial and Appeal Board

(board),[1] refusing registration of THE NOW GENERATION as a service mark for A & M's promotional services, based on the board's finding that A & M had not actually used the mark to identify such services. This case was previously before this court in appeal No. 85–867, an appeal taken from the board's previous decision,[2] and resulting in a remand to the board for the taking of additional evidence.

We hold that the standard for service mark registration for advertising or promotional services is the same as that for other services, and that the board clearly erred in finding that A & M had not used THE NOW GENERATION as a mark for its promotional services. The board's decision refusing service mark registration is reversed.

### ISSUES

The issues are:

1. Whether a service mark may be registered for advertising or promotional services and, if so, what is the standard for registration; and

2. Whether the board clearly erred in finding that A & M had not used THE NOW GENERATION as a mark for A & M's promotional services and, thus, whether the board erred in affirming the examiner's refusal to register THE NOW GENERATION as a service mark.

### BACKGROUND

A. *Nature of the Case.*

A & M is in the business of providing sales promotion services by creating and licensing sales promotion campaigns. Sales promotion campaigns are used by various types of merchants, such as grocery stores, gas stations, banks, and automobile dealers, for the purpose of increasing customer traffic and sales.

A & M created the campaign known as THE NOW GENERATION or NOW GENERATION and licensed the campaign to banks for the purpose of advertising the banks' financial services, including NOW accounts, and to automobile dealers for the purpose of advertising automobiles. (A NOW account is a checking account that earns interest.) The license entitles the banks or automobile dealers to use THE NOW GENERATION as a mark for financial services or automobiles.

The NOW GENERATION licenses are individually tailored to include the right to use selected physical components from a total of 5 television commercials, 51 radio commercials, 30 newspaper advertisements, a musical theme, direct mail advertising materials, point of sale materials, and other materials. A & M provides services to its licensees including advice as to which components to select, how to use and benefit from the advertising, and how the campaign could assist in the merchandising of banking services or automobiles to the public.

A & M sought to register THE NOW GENERATION as a service mark for "PROMOTING THE SALE OF GOODS AND/OR SERVICES OF AUTOMOBILE DEALERS, FINANCIAL INSTITUTIONS AND RETAILERS THROUGH THE DISTRIBUTION OF PRINTED PROMOTIONAL MATERIALS AND BY RENDERING MERCHANDISING AND SALES PROMOTION ADVICE" (hereinafter referred to as advertising or promotional services). The board affirmed the examiner's refusal to register the mark, finding that the mark had not been used for A & M's *promotional* services, but only for the banks' *financial* services. (In the board decision presently on appeal, the board focused on the bank licensees and not on the automobile dealer licensees.)

The board does not question that A & M provides promotional "services" as opposed to "goods." The board also does not suggest that there is any possibility of confusion or any difficulty in distinguishing between A & M's use of THE NOW GENERATION as a mark for promotional services to banks, on one hand, and the banks' use of the same mark for financial services to

---

**1.** *In re Advertising & Marketing Dev., Inc.,* 231 USPQ 60 (TTAB 1986) *(A & M II).*

**2.** *In re Advertising & Marketing Dev., Inc.,* 223 USPQ 1145 (TTAB 1984) *(A & M I).*

individuals, on the other. The question is whether, in fact, A & M has used THE NOW GENERATION as a mark for its promotional services.

B. *Prior Board Decision and Appeal.*

This court considered this case previously in A & M's appeal (No. 85–867) from the board's previous decision.[3] A & M had submitted to the board a letterhead as evidence of its use of THE NOW GENERATION as a mark for promotional services. The board, in a 2–1 decision, affirmed the examiner's refusal to register THE NOW GENERATION as a service mark, stating that the letterhead "does not persuade us that applicant's potential customers are likely to view this term, as used on those letterheads, as a mark which identifies applicant's sales promotion services," rather than as a term which identifies only banking services or automobiles.[4] The dissenting member of the board filed an opinion stating that he would allow service mark registration because the letterhead specimen was sufficient to establish A & M's use of THE NOW GENERATION as a mark for promotional services, and that the mark would be so regarded by A & M's customers, namely, banks and automobile dealers. The letterhead (in reduced size) is reproduced in figure 1.[5]

Dealer Advertising Development, Inc
1008 E. Thompson Lane   615/833-7104
Nashville, Tenn. 37211

CREATORS, PRODUCERS AND SUPPLIERS OF

## THE NOW GENERATION

SALES PROMOTION SERVICES AND
SPECIALIZED ADVERTISING CAMPAIGNS
FOR AUTOMOBILE DEALERS,
FINANCIAL INSTITUTIONS AND
RETAILERS

Figure 1.   Letterhead Specimen

In the previous appeal, at oral argument on May 8, 1985, before Chief Judge Markey and Circuit Judges Kashiwa and Smith, a member of the panel inquired of counsel whether the refusal to register was based upon evidentiary considerations related to the specimens submitted with the application or upon the legal standard applied by the board majority. Counsel were unable to advise the court whether different evidence presented to the examiner would have altered the examiner's or the board's decision.

On May 30, 1985, A & M and the Solicitor filed a joint motion to remand the case for submission of additional evidence. On June 4, 1985, this court entered judgment, without opinion, remanding the case to the board.

C. *History on Remand.*

On remand to the board, A & M submitted additional evidence relating to A & M's use of THE NOW GENERATION as a mark for promotional services. The board, in turn, remanded the case to the examiner.

The additional evidence included the affidavits of two purchasers of A & M's services, who stated unequivocally that they identified THE NOW GENERATION as

---

**3.** *A & M I,* 223 USPQ 1145.

**4.** *A & M I,* 223 USPQ at 1147.

**5.** Dealer Advertising Development, Inc., identified on the letterhead, was A & M's predecessor in interest.

the mark for A & M's promotional services. A & M also submitted the affidavit of its president, who described in detail the nature of A & M's promotional services and its use of THE NOW GENERATION as a mark for those services. A & M further submitted a postcard specimen sent to banks, and an advertising specimen from *Bank Marketing* magazine, in which specimens THE NOW GENERATION clearly was used to identify A & M's promotional services.

On January 2, 1986, the examiner renewed his final refusal to register. He acknowledged receipt of the additional evidence, but nevertheless decided that registration could not be allowed, stating the following reason:

> [I]t was held in *Admark* [214 USPQ 302 (TTAB 1982)], which contained a similar portfolio of specimens, that an advertising campaign for a client's use made available through license agreements, cannot be said to function as a service mark for the licensor's—applicant's sales promotion services.

A & M again appealed to the board. In the board's second 2–1 decision, it affirmed the examiner's refusal to allow registration of THE NOW GENERATION as a mark for A & M's promotional services.[6] Notwithstanding the additional evidence, the board again found that A & M had not used THE NOW GENERATION as a mark for its *promotional* services, but that the mark had been used only by banks as a mark for their *financial* services. The board cited *In re Admark, Inc.*,[7] in support of its decision, although the board did not construe *Admark* as broadly as the examiner had construed that opinion. The board

did not cite any statute, rule, or regulation as authority for its refusal to register the mark. The dissenting member of the board again filed an opinion, stating that the additional evidence made it even more clear that THE NOW GENERATION was registrable because the mark had been used to identify A & M's promotional services.

## SERVICE MARK REGISTRATION FOR ADVERTISING OR PROMOTIONAL SERVICES

Section 3 of the Lanham Act[8] provides for the registration of service marks. Section 45 of the Lanham Act[9] defines "service mark" as "a mark used in the sale or advertising of services to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown."

The Lanham Act, as amended, does not define "services," nor does the legislative history provide such a definition. However, our predecessor court stated that the term "services" was intended to have broad scope, reasoning that "no attempt was made to define 'services' simply because of the plethora of services that the human mind is capable of conceiving."[10]

The board has held that there is "no reason why a particular class of service" should be excluded from service mark registration, as long as the statutory requirements for registration are met.[11] Each application for registration of a mark must be separately evaluated[12] with reference to the manner in which the mark has been used in the specimens of record.[13]

6. *A & M II*, 231 USPQ 60.

7. *In re Admark, Inc.*, 214 USPQ 302 (TTAB 1982).

8. 15 U.S.C. § 1053 (1982).

9. 15 U.S.C. § 1127 (1982 & Supp. III 1985).

10. *American Int'l Reinsurance Co. v. Airco, Inc.*, 570 F.2d 941, 943, 197 USPQ 69, 71 (CCPA), *cert. denied*, 439 U.S. 866, 99 S.Ct. 190, 58 L.Ed.2d 175 (1978); *In re Canadian Pac. Ltd.*, 754 F.2d 992, 994, 224 USPQ 971, 973 (Fed.Cir.1985).

11. *In re Holiday Inns, Inc.*, 223 USPQ 149, 150 (TTAB 1984).

12. *In re Loew's Theatres, Inc.*, 769 F.2d 764, 769, 226 USPQ 865, 869 (Fed.Cir.1985).

13. *In re Restonic Corp.*, 189 USPQ 248, 249 (TTAB 1975).

In *In re Goodwill Advertising Co.*[14] and in *In re Universal Press Syndicate,*[15] the board has allowed registration of service marks for advertising or promotional services. In each case, the board found that the *advertising services* were sufficiently separate from the *subject* of the advertising, and that the mark had been used to identify the advertising services themselves.

However, in *Admark*[16] and in *In re Local Trademarks, Inc.,*[17] the board refused registration of service marks for advertising or promotional services. In each of the latter two cases, the board found that the marks had not been used to identify advertising services, but only to identify the *subject* of the advertising. In *Admark* and *Local Trademarks,* the board went beyond the issues presented in those cases to make statements which would appear to severely curtail the availability of service mark registration for advertising services.

■ At this point, it will be useful to discuss certain aspects of service marks as they relate to advertising services. The distinguishing characteristic of advertising services is that they are associated with the *subject* of the advertising, whether that subject is goods or services. However, service mark registration for advertising services must be based on use of the mark to identify the advertising services themselves.

A. *Advertising Services Must Be Sufficiently Separate from the Subject of the Advertising.*

■ In certain cases, the board has refused service mark registration when the advertising services are not "sufficiently separate" from the subject of the advertising.[18] Thus, in *In re Radio Corp. of America,*[19] the CCPA affirmed the board's decision refusing service mark registration of the slogan "The Music You Want When You Want It," where the slogan was used only to advertise the applicant's own goods, *i.e.,* records.

On the other hand, as the board stated in *In re Heavenly Creations, Inc.,*[20] "the statute makes no distinction between services on the basis of primary, incidental or ancillary." In *Heavenly Creations,* the board allowed registration of a service mark for the promotion of wigs and hair pieces, where the promotion included demonstrations of hair pieces generally, such that the information and techniques conveyed would be usable with any type or brand of hair piece. The same mark had also been registered as a trademark for hair pieces. The board was "persuaded that applicant is rendering a service over and above that normally involved in promoting the sale of its goods."[21]

It may be helpful to think of a "service," defined in *In re Canadian Pacific, Ltd.,*[22] as "the performance of labor for the benefit of *another.*" In the present case, A & M is in the business of providing advertising services for the benefit of another, *i.e.,* for the benefit of banks and automobile dealers. A & M's sale of advertising services to banks and automobile dealers is a wholly separate transaction from the banks' and automobile dealers' sale of financial services or automobiles to individuals. Here, the board correctly found that A & M's advertising services are sufficiently separate from the subject of the advertising, *i.e.,* financial services and automobiles.

**14.** *In re Goodwill Advertising Co.,* 135 USPQ 331 (TTAB 1962).

**15.** *In re Universal Press Syndicate,* 229 USPQ 638 (TTAB 1986).

**16.** *Admark,* 214 USPQ 302.

**17.** *In re Local Trademarks, Inc.,* 220 USPQ 728 (TTAB 1983).

**18.** *See In re Landmark Communications, Inc.,* 204 USPQ 692, 695 (TTAB 1979).

**19.** *In re Radio Corp. of Am.,* 205 F.2d 180, 98 USPQ 157 (CCPA 1953).

**20.** *In re Heavenly Creations, Inc.,* 168 USPQ 317, 318 (TTAB 1971).

**21.** *Id.*

**22.** *Canadian Pacific,* 754 F.2d at 994, 224 USPQ at 973 (citing WEBSTER'S COLLEGIATE DICTIONARY 909 (5th ed. 1948)).

**B. Mark Must Be Used To Identify Advertising Services, Not Merely To Identify Subject of the Advertising.**

It is not enough for the applicant to be a provider of services; the applicant also must have used the mark to identify the named services for which registration is sought. In In re Universal Oil Products Co.,[23] the CCPA affirmed the board's refusal to register PACOL and PENEX as marks for engineering services, even though the applicant was a provider of such services, because the marks had been used only to identify certain processes and not to identify the engineering services for which registration was sought. The CCPA stated that the applicant had failed to show a "direct association" between the mark and the services named in the application. The "direct association" test does not create an additional or more stringent requirement for registration; it is implicit in the statutory definition of "a mark used * * * to identify and distinguish the services of one person * * * from the services of others and to indicate the source of the services."[24]

In Admark, the board refused registration of "THE ROAD AUTHORITY" as a mark for advertising services, because the mark had been used only to identify retail tire store services. The board went on to make the following sweeping statement:[25]

[T]he mark or slogan that is the focus of an advertising campaign for a client's goods or services cannot be said to function as a service mark for the licensor's —applicant's—advertising agency services.

In Local Trademarks,[26] the board refused registration of "WHEN IT'S TIME TO ACT" as a mark for advertising services, because the mark had been used only to

identify insurance agency services. Citing Admark, the board went on to state:[27]

As a general proposition, an advertising agency is not entitled to register, as a service mark for advertising agency services, every slogan, logo, trademark, etc. that it conceives for its clients' use in connection with the diverse businesses of those clients.

■ Here, A & M urges this court to overrule Admark and Local Trademarks, arguing that those cases make incorrect statements of law which would impose more difficult requirements on registration of marks for advertising services than on registration of marks for other types of services. Despite any suggestion to the contrary in those two cases, it is clear that the standard for service mark registration for advertising services is the same as that for other types of services.[28]

■ However, we decline to overrule Admark or Local Trademarks. In each case, the basis for the board's refusal to register the mark was the finding that the mark had not been used to identify advertising services, but only the subject of the advertising. The records in the two cases are not before this court, and we cannot say that the board's findings were clearly erroneous in either case. The board may refuse service mark registration where the mark has not been used to identify the named services for which registration is sought.[29]

In the present case, the examiner should not have relied on the statement made in Admark to refuse registration. However, on appeal to the board, the board correctly stated that A & M would be entitled to registration of THE NOW GENERATION as a mark for advertising services if A & M had actually used that mark to identify its

23. In re Universal Oil Prods. Co., 476 F.2d 653, 177 USPQ 456 (CCPA 1973).

24. 15 U.S.C. § 1127 (1982 & Supp. III 1985).

25. Admark, 214 USPQ at 303.

26. Local Trademarks, 220 USPQ at 730; see also Restonic, 189 USPQ 248 (registration refused for "NICE TO GET HOME TO" as a mark for adver-

tising services because mark had been used only to identify licensees' mattresses).

27. Local Trademarks, 220 USPQ at 730.

28. See Goodwill Advertising, 135 USPQ 331.

29. 15 U.S.C. § 1127 (1982 & Supp. III 1985); Universal Oil Prods., 476 F.2d at 656, 177 USPQ at 457.

advertising services.[30] The board refused service mark registration based on its finding that A & M had *not* used THE NOW GENERATION as a mark for its advertising services.

## WHETHER THE BOARD CLEARLY ERRED IN FINDING A & M DID NOT USE THE MARK FOR ADVERTISING SERVICES

■ Whether a mark has been used to identify a particular type of service is a question of fact reviewable under the clearly erroneous standard.[31] This court reviews the board's findings for clear error based on the evidence of record, including the specimens of use of the mark and the affidavits of A & M's president and of the purchasers of A & M's services.

■ On this record, the board clearly erred in finding that A & M had not used THE NOW GENERATION as a mark for its promotional services. A & M (here, its predecessor in interest) submitted a letterhead specimen naming itself as the "creators, producers and *suppliers* of THE NOW GENERATION sales *promotion services* and specialized advertising campaigns *for* automobile dealers, financial institutions and retailers." (Emphasis supplied.) This letterhead was actually used in correspondence with financial institutions and automobile dealers regarding A & M's promotional services. It is difficult to imagine how A & M could have made a clearer use of the mark to identify its promotional services. However, if any doubt remained, on remand A & M submitted postcard and magazine advertising specimens to the same effect, as well as affidavits from purchasers of A & M's services stating that they considered THE NOW GENERATION to identify A & M's promotional services.

The board has equated the messenger with the message, as a result of which the messenger has been unjustly shot down.

The board majority selectively focused only on those aspects of the evidence which showed the banks' use of THE NOW GENERATION to identify the banks' financial services. This analysis was unavailing, since the board conceded that there was no difficulty in distinguishing between the two different uses of the same mark, and that the mark would be registrable for promotional services if A & M showed that it had used the mark to identify such services.

## CONCLUSION

■ Service mark registration is available for advertising or promotional services under the same standard as for other services, *i.e.*, the mark must have been "used in the sale or advertising of services to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown."[32] Cases involving advertising services may present factual considerations including whether the services are "sufficiently separate" from the subject of the advertising, and whether the mark has been used to identify the advertising services themselves.

Here, the board clearly erred in finding that A & M had not used THE NOW GENERATION to identify its promotional services; hence, the board's decision refusing registration is reversed.

REVERSED.

---

**30.** The board concedes that there would not be any difficulty in distinguishing between A & M's use of the mark for advertising services to banks, and the banks' use of the same mark for financial services to individuals.

**31.** *Stock Pot Restaurant, Inc. v. Stockpot, Inc.,* 737 F.2d 1576, 1578, 222 USPQ 665, 666 (Fed. Cir.1984).

**32.** 15 U.S.C. § 1127 (1982 & Supp. III 1985).