## In re DR PEPPER COMPANY.

### No. 86–1691.

United States Court of Appeals,
Federal Circuit.

Dec. 24, 1987.

Paul F. Kilmer, Mason, Fenwick & Lawrence, of Washington, D.C., argued for appellant.

Albin F. Drost, Asst. Sol., Office of the Solicitor, of Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol.

Before NIES and NEWMAN, Circuit Judges, and RE, Chief Judge.[*]

NIES, Circuit Judge.

Dr Pepper Company appeals from the decision of the Patent and Trademark Office Trademark Trial and Appeal Board, 1 USPQ2d 1421 (TTAB 1986), affirming the examining attorney's refusal to register the mark PEPPER MAN as a service mark on the ground that applicant's asserted service of sponsoring and operating a particular contest to promote its soft drinks was not a service within the contemplation of sections 3 and 45 of the Trademark Act of 1946, 15 U.S.C. §§ 1053 and 1127 (1982 & Supp. III 1985). We affirm.

### I

Appellant filed an application, Serial No. 477,600, seeking registration of PEPPER MAN which it asserts is its "service mark for sponsorship and operation of contest services."[1] To promote its DR PEPPER soft drinks, appellant conducts a promotional contest in which cash prizes are awarded to households found to have on hand certain specified quantities of unopened cans or bottles of DR PEPPER soft drinks, or certain coupons called "I'M A PEPPER" cards, which can be obtained free of charge from Dr. Pepper or its bottlers. Appellant displays the name PEP-

---

[*] The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

1. Specifically, the application states that the mark was used for the services of "sponsorship and operation of contests in which cash awards are presented to selected households based upon the quantity of certain soft drink products present in those households or the quantity of official 'I'm a pepper' cards present in those households." Prizes are also awarded to randomly selected shoppers near stores selling DR PEPPER soft drinks if the shoppers have in their possession the required cans, bottles, or "I'M A PEPPER" cards. In either case, the amount of the prize depends on the quantity of soft drinks or cards found. The awards are made by applicant's agent who is called the PEPPER MAN.

PER MAN on promotional pieces for the contest.

The examining attorney refused registration, and the board affirmed, on the ground that applicant was not rendering a service within the contemplation of the Act. The crux of the board's reasoning is that

> where, as here, an activity claimed to be a service is incidental to the sale of goods, the activity cannot be separately recognizable as a service unless it is shown that the activity constitutes something clearly different from, or over and above, any activity normally involved in promoting the sale of such goods. The running of a contest to advertise and promote the sale of one's goods is not a service over and above, or materially different from, what would normally be expected from one engaged in the sale of goods.

1 USPQ2d at 1422 (citations omitted).

## II

The sole issue raised on appeal is whether conducting a contest to promote the sale of one's own goods is a "service" within the meaning of sections 3 and 45 of the Trademark Act of 1946, 15 U.S.C. §§ 1053, 1127 (1982).[2] Appellant maintains that sponsorship and operation of a promotional contest is a "service" to the public because some of them will receive the benefit of cash prizes. Thus, it maintains that the name it uses in promoting the contest is registrable as its service mark.

While this court and its predecessor have stated that "services" is a term of "broad scope" under the Lanham Act, *In re Advertising & Mktg. Dev., Inc.*, 821 F.2d 614, 618, 2 USPQ2d 2010, 2013 (Fed.Cir.1987), some business activities which may be described in terms of a "service" to the public do not constitute a service within the intendment of the Act. Appellant does not challenge that general proposition, but urges that contest activities to promote one's products should not be placed in that category, particularly when denominated by a name different from the trademark for the product.

The Act itself provides no definition of a "service"[3] and the legislative history gives no guidance beyond the general principle that, for the first time, marks of businesses engaged in rendering services, such as laundries, were made registrable.[4] Further refinement was left to the administrative agency, now the Patent and Trademark Office, and to the courts.

Through a series of decisions it has become a settled principle that the rendering of a service which is normally "expected or routine" in connection with the sale of one's own goods is not a registrable service whether denominated by the same or a different name from the trademark for its product. This interpretation is a refinement of the basic principle that the service for which registration is sought must be rendered *to others.*[5] Merely advertising one's own goods, while, in a sense, an "informational" or in some instances an "entertainment" service to others, was early held not to be a "service" within the pur-

---

**2.** Section 3 of the Trademark Act of 1946, 15 U.S.C. § 1053, provides in pertinent part:

**Service marks registrable**

Subject to the provisions relating to the registration of trade-marks, so far as they are applicable, service marks used in commerce shall be registrable, in the same manner and with the same effect as are trade-marks, and when registered they shall be entitled to the protection provided in this chapter in the case of trade-marks....

The provision of section 45 of the Trademark Act of 1946, 15 U.S.C. § 1127, relating to service marks states:

The term "service mark" means a mark used in the sale or advertising of services to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of services, even if that source is unknown.

**3.** *See supra* note 2 for a definition of "service mark."

**4.** Service marks were not registrable under the prior statute, the Act of 1905.

**5.** *See In re Canadian Pacific Ltd.*, 754 F.2d 992, 994, 224 USPQ 971, 973 (Fed.Cir.1985) (corporation's reinvestment plan for stockholders held unregistrable because not service *to others;* interpretation in United States Patent and Trademark Office, *Trademark Manual of Examining Procedure* § 1301.01 (1983) approved).

view of sections 3 and 45. *In re Tampax Inc.*, 91 USPQ 215 (Dec.Comm'r Pat.1951).

The interpretation that a company's promotional activities are not services to others under the Act was subsequently endorsed in judicial decisions of our predecessor, the Court of Customs and Patent Appeals. *In re Radio Corp. of Am.*, 205 F.2d 180, 182, 98 USPQ 157, 158 (CCPA 1953) (supplying radio stations with packaged radio programs of records is mere advertising of record company, not a "service" to consumers). *See also In re Orion Research Inc.*, 523 F.2d 1398, 1400, 187 USPQ 485, 487 (CCPA 1975) (*Orion I*) (the repair or replacement of one's own merchandise or "guaranteeing" same held not a registrable "service" because it is normally expected by purchasers from the purveyor of goods); *In re Orion Research Inc.*, 669 F.2d 689, 691, 205 USPQ 688, 690 (CCPA 1980) (*Orion II*) (same). Thus, our precedent has drawn the line in connection with promotional activities that those which are "ordinary or routine" are not registrable services, despite some extra benefit to the public beyond the existence of the goods themselves. The public does not, per our precedent, perceive such activity as a service to the public but as mere sales activity by and for the benefit of the offerer of the goods.

In several decisions the board has specifically addressed the registrability of the name for a contest promoting the goods of the company conducting the contest. In *In re Johnson Publishing Co.*, 130 USPQ 185 (TTAB 1961), the board held that the publisher of a magazine which offered prizes to readers who submitted at least one paid subscription and solved a puzzle was not providing a registrable service. This interpretation was followed and reaffirmed in *In re Loew's Theatres, Inc.*, 179 USPQ 126, 127 (TTAB 1973), where the board stated:

> The lottery type contest, as conducted by applicant, is incidental to the sale of goods, and it is not a service over and above that normally involved in the promotion and sale of its goods. It is directly related to and tied to applicant's "KENT" cigarettes, and it is nothing more and would not be recognized as anything more than a promotional gimmick or device used to advertise and foster the sale of these cigarettes. Benefits do accrue to winners of the contest, but this is true generally of all promotional devices, but this fact alone cannot serve to obfuscate the true nature and character of applicant's contest.

While the interpretations of the statute by the board are not binding on this court, under general principles of administrative law, deference should be given by a court to the interpretation by the agency charged with its administration. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985) ("An agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress."). We conclude that the board reasonably has treated promotional contests as "routine" sales activity for a producer's goods.

Acknowledging that "routine and ordinary" sales activities have not been registrable services in the past, appellant argues that the board adopted a more "modern" standard with respect to what constitutes a registrable service in *In re Landmark Communications, Inc.*, 204 USPQ 692, 696 (TTAB 1979), and urges that we endorse that new standard. In *Landmark*, the board found that the publisher of a newspaper was not entitled to register the name of a section of its newspaper for "educational and entertainment services," stating that for a service to be registrable, an "activity must be qualitatively different from anything *necessarily done* in connection with the sale of goods." 204 USPQ at 695 (emphasis added).

Focusing on the word "necessarily," appellant asserts that because its contest is not *necessary* to the sale of its goods, the conduct of its contest must be held to constitute a registrable service under the *Landmark* test. A closer reading of *Landmark* in the light of prior case law, however, dispels this facial inconsistency. First, it must be noted that neither this panel nor the board can depart from the

above precedent of this court which holds that ordinary or routine promotional activities of one's own goods do not constitute a registrable service. *South Corp. v. United States*, 690 F.2d 1368, 1369, 215 USPQ 657, 657 (Fed.Cir.1982). Equally important, the board's decision in *Landmark* addresses a somewhat different facet of the problem.

Some purported services by a seller of goods simply are inherent in the goods. The service of "designing," "manufacturing," "packaging," or "distribution" of one's own goods or, as in *Landmark*, the collation of articles and features for a newspaper, are "necessarily done" to have goods to sell. Such activities are clearly performed for one's self, not offered to others. Advertising and other promotional activities are not "necessary" in the sense that the goods would not exist without them. Thus, the goods and associated promotional activities can more easily be seen as separable, and, depending on the nature of the activity, some degree of service may be rendered to the public, not merely to one's self. Thus, while "routine and ordinary" activities are not "necessary," activities which are "necessarily done" in connection with the sale of one's goods are the quintessential "routine or ordinary" activities associated with the sale of one's goods. Thus, the *Landmark* "necessarily done" standard and the *Orion* "routine or ordinary" standard mesh harmoniously. With this understanding, the *Landmark* standard does not conflict with the test applied by the board here, nor is it a more "modern" standard.

Appellant argues that the exclusion of services ordinarily or routinely rendered in connection with the sale of goods will preclude registration of marks for a vast array of activities currently recognized as services under the Act, such as those provided by retail department stores, mail order companies, and gasoline stations. Contrary to appellant's view, this consequence does not follow. Appellant leaves out the key element which is that the activities being questioned here relate to promotion of *its own goods*. Department stores and gasoline stations are service businesses and provide precisely the types of services intended to be brought under the Act. Indeed, advertising agency services as well as the service of conducting contests *for others* are within the Act.[6] A parallel non-registrability situation with a service business would be a refusal to register an asserted service of offering "free" glassware to customers who have made a certain level of purchases at a gasoline station, the service of providing "free" bags for purchasers at a grocery store, or a lottery contest by a new shopping mall. Registration of the marks identifying the services of service businesses is not endangered by continuing to apply the principle that services which are ordinary or routine in the sale of goods (or services), such as promotional activities for one's own business, are not services within the meaning of the Act. As stated by Professor McCarthy:

> The point is that a manufacturer or merchant cannot proliferate registrations by obtaining a trademark registration along with a whole raft of service mark registrations covering each and every "service" which every other competitor also provides as an adjunct to the sale of goods. . . .

> Thus, even though a given term may function as both a trademark and a service mark, the service must constitute more than mere promotion and advertising of one's own goods. The difference lies between those services which are mandatory or common in promoting the sale of this type of merchandise, and those services which are not so mandatory or common.

1 J. McCarthy, *Trademarks and Unfair Competition* § 19.30, at 940 (2d ed. 1984)

---

**6.** Appellant throws up a straw man that if a department store sells private label merchandise, it somehow will lose its right to service marks under the test applied by the board. There is no question but that one may acquire rights in a mark or marks both for goods and for services. We are not dealing with the question of loss of rights but with the question of whether rights have been acquired in a mark for services within the contemplation of the statute.

(footnotes omitted). Such proliferation of registrations by devising ways to describe a sale-of-goods situation as a service has been held not to be within the intendment of the Act. We adhere to that precedent.

Alternatively, appellant seeks to elevate its promotional contest to a service under the Act on the ground that its contest is different from a routine advertising contest in that persons who have not purchased its goods may be contacted. However, it admits that only persons who have full containers for its soft drink or have obtained promotional coupons can win. We see nothing which takes this contest out of the ordinary advertising contest.

### III

For the foregoing reasons, we affirm the board's decision refusing registration on the ground that appellant is not rendering a service within the meaning of the Act.

AFFIRMED.

NEWMAN, Circuit Judge, dissenting.

I respectfully dissent. Federal registration of the mark PEPPER MAN is squarely within the intended purview of the Lanham Trademark Act. Precedential authority also weighs heavily in support of registration.

The policy underlying federal registration of trade and service marks is to facilitate business activity, not to place unnecessary obstacles in its path. The policy of the Lanham Act is to "conform to legitimate present-day business practices". D. Robert, *Commentary on The Lanham Trade–Mark Act*, 15 U.S.C.A. 265, 267 (1948). Importantly in connection with the issue at bar, "the Act was designed to ... create an incentive to register all valid marks in use to the end that a complete public record of such marks might be maintained and the rights of all registrants thereby secured." *Id.* at 268.

This strong policy favoring registration of marks used in commerce is reflected in the decisions of this court, our predecessor Court of Customs of Patent Appeals, and the Trademark Trial and Appeal Board,

which have consistently approved registration for a distinctive mark, such as PEPPER MAN, that is associated with trade and service activities. It is the exception, not the rule, when such activities have been held to be outside the compass of the Act, thus barring a trademark or service mark used in association with such activities from access to federal registration. The services with which PEPPER MAN is associated do not qualify for such exceptional treatment.

It is not registration that secures to businesses the right to own and use a particular mark; that right resides in the common law, as is recognized in the Lanham Act. Federal registration achieves additional purposes: it records that right on a public register, thereby giving notice to others; it facilitates enforcement of legitimate marks against wrongful users; it assures the right to continue to use the mark after a statutory period of unchallenged use; and it provides other commercial benefits. The statutory purpose is to facilitate, not to foreclose, access to these benefits. The Act itself is so phrased:

§ 1052. *No trademark* by which the goods of the applicant may be distinguished from the goods of others *shall be refused* registration on the principal register on account of its nature unless it [meets the requirements of sections (a) through (f), none here held applicable]. [emphasis added]

These same rights extend to services:

§ 1053. Subject to the provisions relating to the registration of trademarks, so far as they are applicable, service marks used in commerce *shall be registrable*, in the same manner and with the same effect as are trademarks.... [emphasis added]

The Patent and Trademark Office did not assert that PEPPER MAN is not distinctive, but instead held, contrary to its own precedent, that the contest and promotional services with which it is used are not among those contemplated for service mark registration. This withdrawal of the right to registration—for the statute is written, as observed *supra*, in terms of

right, not privilege—is hostile to the principles and the public purposes of the Lanham Act. The weight of past practice has granted registration to services of the type distinguished by the mark PEPPER MAN.

The statute contains the following definition of "service mark":

15 U.S.C. § 1127 ... The term "service mark" means a mark used in the sale or advertising of services to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown. Titles, character names and other distinctive features of radio or television programs may be registered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor.

In *American International Reinsurance Company, Inc. v. Airco, Inc.*, 570 F.2d 941, 943, 197 USPQ 69, 71 (CCPA), *cert. denied*, 439 U.S. 866, 99 S.Ct. 190, 58 L.Ed.2d 175 (1978), our predecessor court discussed the scope of services contemplated in the Lanham Act, remarking that:

While the Act defines the term "service mark," it does not define the broad term "services." Similarly, the legislative history of the Act addresses the term "service mark" but sheds little light on what was intended to be meant by "services."

and concluded that:

It would appear self-evident that no attempt was made to define "services" simply because of the plethora of services that the human mind is capable of conceiving. This, *ipso facto,* would suggest that the term be liberally construed. Cognizant of the foregoing statement, each case must be decided on its own facts, giving proper regard to judicial precedent. [footnotes omitted]

Precedent has implemented this mandate for realistic, rather than constrained, statutory construction. In the case closest on its facts to those at bar, *In re Congoleum Corporation*, 222 USPQ 452 (TTAB 1984), the applicant conducted contests for customers, using the phrase "The Wonderful World of Congoleum". The board held that the phrase was properly registrable as a service mark, observing that the fact that the mark used for the contests was different from that used with the product tended to show that the promotional activity could support a separate service mark. The board stated:

That an applicant uses, in conjunction with such activity, a mark different from that used in conjunction with its principal goods or services is also a factor to be considered in determining whether the activity is a service for which a service mark registration may issue.

*Id.* at 453–454. The board explained that registration was authorized because the contest activity conducted under the phrase was a service separate from the applicant's principal activity; because the service was not a necessary part of the applicant's primary business; and because the service conferred a benefit different from that normally expected from the sale of the applicant's goods. *Id.* at 454.

This court's decisions have also favored registration of separate service marks for promotional campaigns. In *In re Advertising & Marketing Development, Inc.*, 821 F.2d 614, 620, 2 USPQ2d 2010, 2014 (Fed. Cir.1987), this court stated that "the standard for service mark registration for advertising and promotional services is the same as that for other services", and held that the term THE NOW GENERATION, used in sales promotion campaigns for financial services and for advertising automobiles, was registrable as a service mark. This court emphasized that the "mark must be used to identify advertising services [the service for which registration was sought], not merely to identify [the] subject of the advertising." *Id.* at 620, 2 USPQ2d at 2014.

The principle is also illustrated in the board's decision in *In re Universal Press Syndicate*, 229 USPQ 638 (TTAB 1986), wherein the board approved the registration of "Cathy remembers" for licensing services for the cartoon character "Cathy". No goods are purveyed under the mark "Cathy remembers", although the licensing

services bear a continuing relationship to those services provided with the service mark "Cathy". In accord is the board's holding in *In re Heavenly Creations, Inc.*, 168 USPQ 317, 318 (TTAB 1971) ("the fact that a service may be incidental to a principal service or to the sale of goods does not make it any less of a service or make a mark used in the sale or advertising of such service any less of a service mark") (quoting *In re John Breuner Co.*, 136 USPQ 94, 95 (TTAB 1963)).

The decisions on service mark registration have turned on the specific facts of each case. The controlling question has been whether the services were of a nature normally expected based on the applicant's principal activity. Most past decisions denying registration arose in cases wherein the applicant's principal activity was the sale of goods, and the applicant sought further registration, usually of the identical mark, for services undertaken in connection with the sale of the same goods. As Professor McCarthy explained:

> Promotional services consisting of conducting demonstrations solely to demonstrate use of the goods is not a "service," but if the demonstrations do *more* than merely promote the sale of goods, and also generally instruct buyers in how to use this kind of product in general, then this is a "service", as it is *more than* the mere normal promotion of the sale of this product. [emphases in original, footnote omitted]

1 J. McCarthy, Trademarks and Unfair Competition § 19.30 at 939–40 (2d ed. 1984). *See also Ex parte Handmacher–Vogel, Inc.*, 98 USPQ 413 (Comr.Pats.1953), wherein the mark WEATHERVANE, registered for apparel, was held registrable to the same owner for the service of conducting promotional golf tournaments. In contrast, the board has refused registration to what it called a "promotional gimmick", as in *In re Loew's Theaters, Inc.*, 179 USPQ 126, 127 (TTAB 1973).

When the services are legally required, registration has been denied. In *In re Orion Research Inc.*, 523 F.2d 1398, 187 USPQ 485 (CCPA 1975), our predecessor court held that it was not a "service" to offer a repair or replacement warranty with the sale of goods, and therefore that the words and design associated with that warranty was not a service mark. The court, explaining the basis for its decision, distinguished the service business of repairing instruments, which the court remarked could indeed be conducted in association with a registrable service mark, from the warranty that accompanies the sale of goods, which the court held was a usual and legally required merchandising duty.

These services meet the criteria detailed in *In re Landmark Communications, Inc.*, 204 USPQ 692, 695 (TTAB 1979), wherein the board summarized the policy represented in these decisions, and concluded that a registrable service may be "primary, incidental, or ancillary" to the product to which the service relates. The mark PEPPER MAN is used to identify specific contest promotional services, services which are neither ordinary nor routine in purveying soft drinks. These services are in a "material way a different kind of economic activity than what any purveyor of the ... tangible product necessarily provides". *Id.*

Registrability requires only that the service have a sufficient independence of identity from the goods that are being promoted. It is not fatal to registration that the service has as its motivation the good will and sales benefit of "Dr Pepper" brand soft drinks. It suffices for purposes of registration if the primary signification of the service mark PEPPER MAN is the service to which it is attached.

Applicant emphasizes that the PEPPER MAN promotional contests are apart from the normal advertising of "Dr Pepper" soft drinks, and, distinguishing *Orion*, that there is no legal requirement for such promotional activity. Although applicant strains when it argues that the purchaser of "Dr Pepper" soft drinks does not have to drink them to win the contest, federal registration does not depend on so fine a palate. The purpose of federal registration of marks used in business is to provide

safeguards for commercial activity, and to provide those public assurances of quality and responsibility that are borne by trade and service marks.

The majority's decision does not bar the use of PEPPER MAN in connection with promotional contests. It only denies the merchant and the public of the benefits and responsibilities of federal registration. The imposition of new restrictions on registration, based on a narrowing interpretation of the statute, is inimical to the public purposes of the Lanham Act. I can not join the majority in its reasoning or conclusion.