NEWMAN, Circuit Judge,
dissenting.
Now, thirty-five years after federal registration of the service mark AIRFLITE and thirty-nine years after Aycock’s first use of the service mark AIRFLITE, without any objection or opposition to the registration in 1974 or its renewal in 1994, it is inappropriate for the PTO to criticize its own description of the services and on this ground to invalidate the registration as void when granted. The Trademark Trial and Appeal Board (TTAB) considered no question of prior use, or confusion, or deception, or any other substantive ground of invalidity. This registration was unchallenged for decades, until an apparent later user, who selected the same word “Air-flite” as its trade name for a different business, brought this cancellation proceeding. The TTAB erred in reaching out to void this registration on the questionable grounds that it adopted.
DISCUSSION
The TTAB found a flaw in the description of the services in the registration of the mark AIRFLITE. The TTAB then redescribed the services, and found that the mark was not used for the services as they were redescribed by the TTAB. However, the AIRFLITE services when the mark was registered in 1974 were the same services as described during prosecution of the application, the same services as when the Section 8 affidavit was filed in 1980, the same services as when the registration was renewed in 1994. The description in the registration, when finally granted after movement to the Supplemental Register, was not perfect, but neither was it incorrect. The Board errs in now interpreting the description as excluding the very services that were the basis of the registration. The services for which the mark was registered were described during the examination, shown in the specimens submitted with the application, and reasonably reflected in the description that the examiner required. If indeed a flaw in the registration is now discovered, after thirty-five years, it should be clarified and corrected, not voided ab initio. The cancellation of this long-standing registration is seriously flawed, and is seriously unjust.
*1363 The ground on which the Board founded its decision was not raised by the petitioner, and is not only incorrect but also was improperly considered by the Board. The Board held that AIRFLITE was not a registrable sendee mark because Aycock was using the mark to recruit air taxi operators, the Board ruling that this use did not constitute a registrable service. This issue was not raised in the cancellation proceeding, was not briefed by either party, and was not properly before the Board. The cancellation petitioner itself points out this error, in its brief to this court:
The question of whether the activity of recruiting air taxi operators and signing them to contracts to carry passengers in accordance with reservations arranged through Aycock was a service for which a service mark would be registrable was not pleaded or tried at the Trademark Trial and Appeal Board.
Appellee Br. 13-14. The Trademark Board Manual of Procedure, at § 314, prohibits reliance by the Board on an unplead-ed issue in cancellation proceedings, for the registrant is entitled to know the grounds to which it must respond. Yet this prohibited procedure underlies the Board’s decision voiding Aycock’s registration.
Having improperly considered this ground, the Board further erred by ruling that Aycoek’s AIRFLITE service does not meet the requirement that a registrable service “must be performed to the order [of], or for the benefit of, someone other than the applicant.” Airflight, Inc. v. Aycock Eng’g, Inc., Cancellation No. 92/032,-520, 2007 WL 2972237, at *5 (TTAB 2007) (quoting Trademark Manual of Examining Procedure (T.M.E.P.) § 1301.01(a)). The Board ruled that only benefit to air passengers could support registration of AIR-FLITE, and found that without sales to passengers, Aycock’s ongoing activity of forming a network of air taxi operators benefited only Aycock. This finding is clearly incorrect, for the air taxi operators who entered into contracts with Aycock, paying a fee, obviously had their own benefit' in mind.
After improperly ruling that the service of providing a network of air taxi operators cannot support a registrable service mark, the Board held that the description of services in the AIRFLITE registration requires the booking of flights in airplanes. The TTAB held that since no individuals had booked flights in Aycock’s network, Aycock was not performing the service described in the registration, and cancelled the registration. My colleagues on this panel appear to agree with the Board that the registration requires the transportation of passengers, and thereby define the registration into invalidity. However, the Lanham Act was designed to support the marks of commerce. See, e.g., In re Adver. & Mktg. Dev., Inc., 821 F.2d 614, 618 (Fed.Cir.1987) (quoting Am. Int’l Reinsurance Co. v. Airco, Inc., 570 F.2d 941, 943 (CCPA 1978)) (in the Lanham Act “the term ‘services’ was intended to have broad scope” and “no attempt was made to define ‘services’ simply because of the plethora of services that the human mind is capable of conceiving”). The definition should be construed to support the registration, when it is reasonable to do so.
In addition to its irregular procedure, the Board is incorrect in substance, for the service of recruiting air taxi operators and contracting with them is indeed a registrable service. It is not disputed that this activity was performed in commerce, and accorded with the service mark statute as then written (and today is substantially the same):
For purposes of this Act a mark shall be deemed to be used in commerce ... (b) *1364 on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in this and a foreign country and the person rendering the services is engaged in commerce in connection therewith.
15 U.S.C. § 1127 (1970). The specimens filed with the application show display of the mark AIRFLITE in Aycock’s advertising of its services to air taxi operators nationwide, and the record states that Ay-cock obtained contracts with about a dozen air taxi operators. Mr. Aycock testified that this is far fewer than the number that he needs, and that the business has not progressed as he had hoped. However, there was no finding of discontinuance or abandonment of the activity. Slow commercial progress, or absence of income or profit, is not a ground of cancellation of registration. See generally United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc., 128 F.3d 86, 92 (2d Cir.1997) (use in commerce under the Lanham Act is not limited to profit-seeking uses). The Lanham Act authorizes cancellation of abandoned marks, but a mark is not abandoned because the proprietor is encountering difficulties in the business.
The Board relied on TTAB decisions relating to services not yet rendered, to support the Board’s position that Aycock had not used AIRFLITE in commerce.. For example, in In re Cedar Point, Inc., 220 USPQ 533 (TTAB 1983), the applicant was found not to have used the mark OCEANA for a “marine entertainment park” because the park had not yet opened, and the Board held that advance publicity was not use in commerce. However, Aycock had used AIRFLITE to implement the network of air taxi carriers; Aycock was not engaging in advance publicity, but was performing the registered service, for Aycock made “an open and notorious public offering of the services to those for whom the services are intended.” Intermed Commcn’s, Inc. v. Chaney, 197 USPQ 501, 507 (TTAB 1977).
B
The prosecution history shows the genesis of the imperfect description in the registration. In the initial application filed on August 19, 1970, the AIRFLITE services were described as “a communication service between persons desiring custom air travel and certified air taxi operators,” and the applicant requested registration in Class 101, “Advertising and Business.” J.A. at 731. The specimens showed the mark AIRFLITE displayed in a document directed to air taxi operators, pointing out the advantages to the operators of the service provided by AIRFLITE and inviting their participation. The trademark examiner rejected the application on the ground that the word AIRFLITE was “merely descriptive,” objected to the description as indefinite, and suggested that the services be described as “airplane reservation services.” J.A. at 735.
Aycock in response objected to the examiner’s suggested description, and proposed “a communication service between persons desiring scheduled and unscheduled airplane reservation services and certified air taxi operators.” J.A. at 736. The examiner rejected this proposal, stating, “The mere fact that applicant communicates with people does not mean that it offers a communication service.” The examiner stated that the application should be amended to describe the service as “arranges charter air flights.” The examiner also objected that the mark was “highly descriptive,” and proposed reclassification into Class 105, “Transportation and Storage.” J.A. at 741. Aycock responded that his service did not charter whole aircraft, but arranged for individual seat reservations on chartered flights, and *1365 offered to further amend the description to “a communication service between persons desiring scheduled and unscheduled airplane reservation services and certified air taxi operators in the locale in which the charter is desired to originate.” The examiner rejected the offer, and issued a final refusal of registration. The examiner also maintained that Class 105 was the proper classification.
Aycock filed an appeal with the Trademark Trial and Appeal Board. Then, after discussion with the examiner, Aycock agreed to transfer the application to the Supplemental Register, and the TTAB remanded for further prosecution. Aycock again explained that the service with which the mark is used “is not a service of arranging charter aircraft but rather is the arrangement of transportation on a per seat basis from one point to another, with the local aircraft operator, under his own trademark whatever it may be, to actually do the flying.” J.A. at 745. After fairly extensive further exchanges, Aycock acquiesced in the final description “arranging for individual reservations for flights on airplanes” and also acquiesced in the reclassification into Class 105. This description, whose flaws are now apparent, was the basis of the Board’s ruling that unless there were actual passenger reservations, the mark was not in use in commerce.
My colleagues agree. However, it is inappropriate now to construe the description of AIRFLITE services as excluding the integral component of making arrangements with air taxi operators. This was the use described in the specimens filed with the application, and was persistently, but fruitlessly, explained to the examiner throughout the prosecution. I do agree that the applicant as well as the examiner offered less than perfect definitions, over this lengthy prosecution. However, as a matter of sound trademark law and fair trademark practice, it is inappropriate now to construe the registration so as to exclude the actual use of the mark as was explained in the examination, shown in the specimens, and fully explored in the public record of the prosecution.
New administrative proceedings are perfect, although in the hindsight bred of litigation much can be made of flaws. Here there is no material violation of law, no harmful error, no doubt as to the services for which registration was requested and granted. It is unfair to penalize the applicant for flaws for which there was at least a shared responsibility, for the trademark examiner does not appear to have scrupulously adhered to the requirement of the Trademark Manual of Examining Procedure § 1402.01(a) (“Deference should be given to the language and the classification set forth by the applicant in the original application.”). Precedent concerning the interpretation of imperfect descriptions is sparse, for if such issues arise, they can normally be remedied without litigation. The panel majority cites two cases that favor narrow construction of the description of services, In re Shell Oil Co., 992 F.2d 1204, 1207-08 (Fed.Cir.1993), and Octocom Systems, Inc. v. Houston Computer Services, Inc., 918 F.2d 937, 942 (Fed.Cir.1990). Both of these cases relate to the effect of the description on likelihood of confusion between competing applicants— an issue unrelated to anything relevant to this appeal.
Based on its origin in the common law of trademarks, the Lanham Act has traditionally been applied to support the commercial activity that is implemented through the marks of trade, with liberal opportunity to correct errors. It is a negation of these principles now to hold that the AIRFLITE registration of thirty-five years was void from the start, because the applicant acquiesced in a prosecution de- *1366 seription that is now susceptible to misconstruction. It is incorrect to construe the description in a manner that invalidates it by ignoring the actual services that were performed. I must, respectfully, dissent from this court’s endorsement of the TTAB’s departure from its obligation to sustain the registered marks of commerce when it is reasonable to do so.