THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: June 9, 2010

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Osmotica Holdings Corporation

_____

Serial No. 77314455

_____

F. Michael Sajovec of Myers Bigel Sibley & Sajovec for Osmotica Holdings Corporation.

Lourdes D. Ayala, Trademark Examining Attorney, Law Office 106 (Mary I. Sparrow, Managing Attorney).

_____

Before Quinn, Walters and Zervas, Administrative Trademark Judges.

Opinion by Walters, Administrative Trademark Judge:

Osmotica Holdings Corporation seeks registration on the Principal Register of the mark OSMODEX, in standard character form, for "consultation services regarding controlled release drug delivery technology for pharmaceutical companies," in International Class 42.[1]

_____

[1] Serial No. 77314455, filed October 26, 2007. The application is based on use of the mark in commerce under Trademark Act Section 1(a), 15 U.S.C. §1051(a), alleging first use and use in commerce as of March 31, 2002.

At issue in this appeal is the Trademark Examining Attorney's final refusal to register applicant's mark on the ground that the mark does not function as a service mark to identify and distinguish the specified services. See Trademark Act Sections 1, 2, 3 and 45, 15 U.S.C. §§1051-1053, 1127.

Initially, the examining attorney's basis for this refusal was that the specimen of use filed with the application allegedly shows a different mark, OSMOTICA, used in connection with the identified services. Applicant submitted a substitute specimen of use on April 30, 2008, which allegedly shows use of the mark OSMODEX in connection with the identified services. However, the examining attorney contends that the term OSMODEX is used in that specimen merely as a reference to applicant's technology rather than as a service mark to identify and distinguish applicant's identified services from those of others. The refusal on this ground was made final.

The appeal is fully briefed. After careful consideration of the evidence and arguments of record, we affirm the refusal to register.

The specimen originally submitted with the application consists of a website screen shot for Osmotica Pharmaceutical which presents an overview of its

Ser. No. 77314455

"innovative drug delivery technologies."  In the body of the overview, all references are to "Osmotica."  There are four links on the left side of the screen, one of which is labeled "Osmodex® Family."  The examining attorney argued that the specimen "does not show the mark OSMODEX in relation to consultation services"; stating that, while the specimen shows the described services, it shows the mark OSMOTICA used in relation to those services.

   Applicant then submitted as a substitute specimen another screen shot from Osmotica Pharmaceutical's website, as shown below:

## Our Technology

### OSMODEX® TECHNOLOGY FAMILY



The Osmodex® family of proprietary technologies combines laser drilled tablet technology with variety of single active and multiple active drug delivery devices.  Osmodex® systems simplify dosing and aid in patient compliance.  Osmodex® technologies can be divided into the following categories of application:

**Osmodex® ID delivery for insoluble drugs**

This platform provides flexible delivery options for insoluble drugs. It can accommodate first order, zero order or delayed release options while assuring full release over the targeted timeframe. This technology has been used to solve multiple challenging insoluble drug delivery problems  (Example - **Osmotica Nifedipine Extended-release Tablets**).

**Osmodex® SD delivery for soluble drugs**

This platform technology can be used to resolve delivery challenges of soluble low-bioavailability drugs or drugs requiring targeted delivery.

Ser. No. 77314455

---

**Osmodex® IR/CR combination**

This platform technology provides a combination of immediate release and controlled release of either one or two drugs. This innovative approach allows an immediate release profile to be safely and uniformly combined with a programmed release according to the pharmacokinetic or pharmacodynamic needs of the product (Example - **Allegra-D® 24 Hour Tablet***).

**Duodex™ Double CR combination**

This dual controlled release platform allows delivery of two drugs from a single osmotic tablet where each drug release pattern can be independently tailored to the desired release profile.

**Osmodex® Triple combination tablet**

This delivery system incorporates compressed drug layers around an osmotic core. This combination provides the benefits of immediate release and controlled release delivery, along with the unique benefits of an osmotic controlled release to achieve three different release rates in the same tablet.

---

The examining attorney continued the refusal to register on the ground that, as used in the substitute specimen, OSMODEX merely identifies applicant's technology, not the services recited in the application. The examining attorney contends that OSMOTICA is used in connection with the only reference to "consulting" in the specimen; and that OSMODEX is used merely to refer to one of applicant's many technologies.

The applicant disagrees and continues to maintain that the specimen supports use of OSMODEX in connection with its services and makes the following argument:

> The statement [in the specimen] "[t]his platform technology can be used to resolve delivery challenges of soluble low bioavailability drugs or drug requiring targeted delivery" is more than merely identifying Applicant's technology and does identify consultation services. The terms "platform technology" and "resolve" clearly

4

> convey to the drug development consumer that Applicant offers consultation services in this area. In addition, the drug development consumer, upon accessing the home page of Applicant's website, would view the statement "In addition, the Company utilizes its well established drug delivery technologies (including its Osmodex® technologies) and its expertise to develop drug candidates for partner companies" and would recognize that consulting services related to the Osmodex technology are being offered.[2]

The examining attorney specifically stated that the identified services are reflected in the original specimen in this record and does not contend otherwise with respect to the second specimen. Thus, the question of whether the specimens demonstrate that applicant offers the identified consulting services is not before us. The sole question before us is whether the term OSMODEX serves as a service mark to identify and distinguish applicant's recited consulting services.

Section 1(a) of the Trademark Act provides that an application must be accompanied by a specimen of the mark as used in commerce. Section 45 provides that a service mark is used in commerce "when it is used or displayed in the sale or advertising of services," and Trademark Rule 2.56(b)(2) in turn requires a specimen showing the mark as actually used in the sale or advertising of the identified services.

---

[2] We note, with reference to the quote from applicant's Internet home page, that this home page is not part of this record.

In order to show service mark use, the specimen must show use of the mark in a manner that would be perceived by the relevant public as identifying the specified services and indicating their source.  See Section 45 of the Act; and *In re Universal Oil Products Co*., 476 F.2d 653, 177 USPQ 456 (CCPA 1973).  See also *In re DSM Pharmaceuticals Inc.,* 87 USPQ2d 1623 (TTAB 2008) and cases cited therein.  At a minimum, the specimen must show a *direct association* between the services and the mark sought to be registered.  See *In re Advertising & Marketing Development*, 821 F.2d 614, 2 USPQ2d 2010, 2014 (Fed. Cir. 1987).

It is not enough that the mark and a reference to the services both appear in the same specimen.  In order to create the required "direct association," the specimen must not only contain a reference to the service, but also the mark must be used on the specimen to identify the service and its source.  See *In re Aerospace Optics Inc*., 78 USPQ2d, 1861, 1862 (TTAB 2006).

Additionally, we note that a term may be used to identify both a process and services rendered in connection therewith.  *In re Produits Chimiques Ugine Kuhlmann SA*, 190 USPQ 305, 306 (TTAB 1976) ("There is no question but that if a designation is used to identify services or to identify both a process and services rendered under the process by the proprietor thereof, it constitutes a service mark within the meaning of the statute").  See also *In re Hughes*

Ser. No. 77314455

*Aircraft Co.*, 222 USPQ 263 (TTAB 1984).  Whether a process term is also used as a service mark is determined by the specimens and other evidence of record in the application. *Id.*  See also *In re Moody's Investors Service, Inc.*, 13 USPQ2d 2043, 2049 (TTAB 1989).

We begin our analysis by taking judicial notice of the following definitions from the *Random House Dictionary* (2010), as accessed at the website www.dictionary.com:

> *Process – noun –* (1) a systematic series of actions directed to some end: *to devise a process for homogenizing milk.*

> *Technology – noun –* (3) a technological process, invention, method, or the like.

OSMODEX is used on the OSMODEX Technology Family webpage, i.e., the second specimen of record, to refer to applicant's "innovative drug delivery technologies."  These technologies, as described on the web page, are analogous to "processes," as defined herein, and, as such, are not goods or services in the context of the Trademark Act. Clearly, OSMODEX is used to identify these technologies. Thus, the question becomes whether applicant's term, OSMODEX, which identifies its drug delivery technologies, also functions as a service mark to identify and distinguish applicant's consulting services.

As noted by the Court in *Universal Oil Products Co.*, 177 USPQ at 457:

7

> The requirement that a mark must be "used in the sale or advertising of services" to be registered as a service mark is clear and specific. We think it is not met by evidence which only shows use of the mark as the name of a *process* and that the company is in the business of rendering services generally, even though the advertising of the services appears in the same brochure in which the name of the process is used. The minimum requirement is some direct association between the offer of services and the mark sought to be registered therefor.
> *(Emphasis in original.)*

Although the two web pages both include the term OSMODEX and purportedly make reference to applicant's consulting services, we conclude that the mark would be perceived by the relevant public as identifying only applicant's drug delivery technology, and not as identifying consulting services. The statement referenced by applicant on the web page, as well as the web page statement that we highlighted in the web page reproduction, are at most oblique references to consulting services and would only be so construed if the reader already knew that applicant offered such services. Certainly, this is not the required direct association between OSMODEX and applicant's consulting services.

*Decision:* The refusal to register is affirmed.