**United States Patent and Trademark Office**

Trademark Trial and Appeal Board

———

*In re Florists' Transworld Delivery, Inc.*

———

Serial No. 85164876

———

Scott J. Major of Millen, White, Zelano & Branigan, P.C. for Florists' Transworld Delivery, Inc.

Seth A. Rappaport, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).

———

Before Wolfson, Shaw and Hightower, Administrative Trademark Judges.

Opinion by Wolfson, Administrative Trademark Judge:

When an applicant sets up a social media account on Twitter in order to advertise or promote its business via a social-networking website, is it the applicant or Twitter that is providing the service of "creating an on-line community for users" interested in the applicant's business? That is the main question presented by this appeal, and has been addressed by a recent revision of Section 1301.04(h)(iv)(C) of the Trademark Manual of Examining Procedure ("TMEP") (April 2016). We hold that often the answer will be Twitter, not the applicant. Therefore, an applicant generally will not be able to rely on use of its social media account to support an application for registration of a mark for such a service.

Florists' Transworld Delivery, Inc. ("Applicant") filed an intent-to-use application to register the mark SAY IT YOUR WAY in standard character format for, as amended, "Online retail store services featuring flowers and gifts, and promoting the retail services of member florists" in International Class 35 and "Creating an on-line community for registered users to participate in discussions, get feedback from their peers, form communities, and engage in social networking featuring information on flowers, floral products and gifts" in International Class 42.[1] Following issuance of a notice of allowance on November 8, 2011, and approval of requested extensions of time within which to file its statement of use, Applicant submitted its statement of use on October 26, 2014, accompanied by the following specimen, which appears to consist of a screenshot of a "profile" page from Applicant's Twitter account. (A "profile" page is a publically accessible page on a user's account. As shown by the record, Applicant's profile page is located at https://twitter.com/ftdflowers).

---

[1] Serial No. 85164876 was filed on October 29, 2010 on the basis of Applicant's bona fide intent to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).



The Trademark Examining Attorney refused registration under Trademark Act Sections 1 and 45, 15 U.S.C. §§ 1051 and 1127, on the ground that Applicant's specimen failed to show the applied-for mark used in connection with the identified services. In response thereto, Applicant submitted a substitute specimen consisting of a total of seven pages printed from the Twitter online social networking site at https://twitter.com/ftdflowers. Applicant described its Twitter pages as "reflecting conversations on the Twitter page involving FTD and FTD fans and customers."[2]

The first three pages from the substitute specimen follow.

---

[2] Applicant's January 18, 2015 Response at 1.

Serial No. 85164876



*- 4 -*



Serial No. 85164876



FTD® Good Neighbor Day® 2014

**Participating FTD Florists**

Search by State
AL-CA | CO-FL | GA-IL | IN-LA | MA-MO
MS-OR | PA-TX | UT-WV | Canada | Mexico

Find the phone number and street address of a participating FTD Good Neighbor Day listed below.

Back to Good Neighbor Day Main Page

Basket Case Gift Baskets Flowers & Balloons, Anchorage, AK
Roadrunner Florist, Phoenix, AZ
Catherine's Floral, Queen Creek, AZ
All My Love, Bakersfield, CA
Corona Rose Flowers, Corona, CA
Encinitas Florist, Encinitas, CA
Farmersville Florist, Farmersville, CA
Remembrance Designs, Los Angeles, CA
Crystal Gardens Florist, Poway, CA
Flowers by Robert Taylor, West Covina, CA
Mario Del Fante Florist, West Covina, CA

back to top

Moon Doggie Gardens, Evergreen, CO
Greenwood Floral, Greenwood Village, CO
The Flower Shop, Grand Junction, CO
Designs by Guzarrdos, Eboynton Beach, FL
Deerfield Florist, Deerfield Beach, FL
Beverly Hills Florist, Beverly Hills, FL
Flower Kingdom, Palm Beach Gardens, FL
Enchanted Florist & Gifts at Tradition Square, Port St Lucie, FL
Flower Spot, Fort Myers, FL

back to top

Atlanta Flower Shop, Roswell, GA
Beretania Florist, Honolulu, HI
Decorah Floral Co., Decorah, IA
Bloom Works Floral, Council Bluffs, IA
Peck's Flower and Garden Shop, Cedar Rapids, IA
Peterson & Tietz Florist & Greenhouses, Waterloo, IA
Katie's Flowers & Greenhouse, Clarinda, IA
Designs By Diana@ Company, Caldwell, ID
Edwards Floral, Preston, ID
Floral Expressions, Auburn, IL
An English Garden Flowers & Gifts, Mokena, IL
Bussee and Rieck Flowers, Kankakee, IL
Flowers by Dave, Benton, IL
Winfield Flower Shoppe, Winfield, IL
Klings Flowers, Oak Forest, IL
Greenville Flower Shoppe, Greenville, IL
Widmer Floral Co Inc., Highland, IL

back to top

Bloomin' Tons Floral Co, Bloomington, IN
The Rose Lady, New Palesttine, IN
The Flower Shop, Lyons, KS
Beards Floral Design, Wichita, KS
Bath County Florist, Owingsville, KY
Tammy's Flowers & Gifts, Abbeville, LA

back to top

Noble's Flower Shop, Pittsfield, MA
Dunkirk Florist and Gifts, Dunkirk, MD
Blooms Florist , Edgewater, MD
First Class Florals, Damariscotta, ME
Daffodils, Bucksport, ME
Lees Floral Garden, Lebanon, ME
Country Bouquet Florist and Furnishings, Battle Creek, MI
Glenda's Inc., Novi, MI
Godley's Country Floral, Ithaca, MI
Hartland Flowers, Inc., Hartland, MI
Albany Country Floral & Gifts, Albany, MN
Farmers Daughter Floral, Shell Knob, MO
The East Prairie Flower Shop, East Prairie, MO
Amy Ann's Florist, Desloge, MO
Impressions floral, Ava, MO
Don Davis Florist, Joplin, MO

back to top

In the final Office action, the Examining Attorney maintained the refusal to register Applicant's mark because neither specimen evidenced use of the mark in connection with any of the identified services. However, following Applicant's Request for Reconsideration, the Examining Attorney accepted the substitute specimen in its entirety[3] as sufficient for International Class 35 ("Online retail store services . . ."), and the Examining Attorney withdrew the refusal with respect to that class. The Examining Attorney maintained the refusal in Class 42 ("Creating an on-line community  . . .") and this appeal resumed. Thus, the only issue on appeal is whether the substitute specimen is acceptable to show use of the mark in Class 42. We affirm that refusal.

The Examining Attorney argues that the substitute specimen does not show the applied-for mark being used in connection with the identified Class 42 services. More specifically, the Examining Attorney contends that Twitter is a "social-media service that allows users to post short messages and have them be seen by individuals who follow that users' [sic] account," and that

---

[3] Both the original specimen and page one of the substitute specimen appear to be virtually identical profile pages from Applicant's Twitter account. The original specimen was a single page only. Because the original specimen does not evidence use of the mark in association with the Class 42 recited services and further because it is subsumed within Applicant's substitute specimen, we have given it no further consideration.

  The substitute specimen included several profile pages as well as copies of additional pages accessed via links from Applicant's profile pages. These additional pages (not shown) demonstrated Applicant's rendering of online retail store services.

Applicant is merely a user of such online services provided by Twitter.[4] According to the Examining Attorney, Applicant's substitute specimen shows only that Applicant promotes its retail services and communicates with its customers and potential customers over the forum created by Twitter, which is facilitated by Applicant's having a Twitter account. The specimen does not show that Applicant has independently set up an online community for others (even, as Applicant contends, one within the Twitter environment). "Twitter has created the community for registered users to interact with each other via social networking. The applicant is merely one of those users. Therefore, the specimen of record does not show the mark used in connection with the identified services in International Class 042."[5]

Applicant contends that it has "established an online community under the SAY IT YOUR WAY mark that allows for, among other things, conversations involving it and its fans and customers about Applicant's flowers and other products."[6] Applicant suggests that Twitter's role is to have created the forum within which Applicant, and others, may create their own virtual communities and that Applicant "has created its own smaller community,

---

[4] 8 TTABVUE 5-6. The citations to "TTABVUE" throughout the decision are to the Board's public online database that contains the proceeding file, available on the USPTO website, www.USPTO.gov. The first number represents the prosecution history number listed in the electronic case file and the second represents the page number(s).

[5] *Id.* at 6.

[6] 6 TTABVUE 3.

within the much broader Twitter sphere, for persons with an interest in flowers and related items."[7] In its reply brief, Applicant submits that its presence on Twitter is not merely to advertise its own products, but to foster a dialogue among persons interested in flowers, such as that provided by the "Q&A" session with Applicant's chief floral designer, which is located on Applicant's Twitter page.[8]

We agree with the Examining Attorney that the substitute specimen does not show service mark use for the identified services in Class 42. The seven pages that comprise the substitute specimen were generally identified by Applicant as (1) pages that contain links to pages on Applicant's retail website, and (2) a page that reflects conversations between Applicant and its customers. Examining them more closely, the first page appears to be a copy of page one (of 34) of Applicant's Twitter profile. The mark is displayed thereon as follows: "Welcome to Say it Your Way™, the official Twitter page of FTD Flowers. Follow us to learn about our latest promotions and for customer service." The second page (which is page 24 of Applicant's Twitter profile) includes an entry (a "tweet") from Applicant dated September 10, 2014. The tweet invites a follower to "check out a list of your local participating florist[s]" in connection with Applicant's "annual Good Neighbor Day." By clicking on the link provided within the tweet (i.e., ow.ly/BiPGb), the follower can access the specific page on

---

[7] *Id.*

[8] 9 TTABVUE 2.

Applicant's corporate website (at http://www.ftd.com) that lists those florists participating in Applicant's "Good Neighbor Day" event. The third page of the substitute specimen is a copy of that linked page from the retail website.

Thus, a follower who discovered the September 10, 2014 tweet inviting him or her to "check out a list of your local participating florist[s]" in connection with Applicant's "annual Good Neighbor Day" would be directed to Applicant's corporate website for the information. Likewise, another tweet from Applicant's profile would connect a user who clicks on the shortened URL link "ow.ly/ByJdQ" to a "Q&A session" with "the man behind the bouquets," who is identified in Applicant's reply brief as its chief floral designer.[9] This tweet is reproduced below:



The substitute specimen consisted of a total of seven pages. The fourth and fifth pages are not relevant to Class 42, the sixth page is another copy of

---

[9] Not included, however, is a copy of the page to which a follower would presumably be linked upon opening "ow.ly/ByJdQ," the Q&A session link.

Applicant's profile page (in this case, the first of 47), and the seventh page (the 45th of 47) purportedly reflects "conversations on the Twitter page involving FTD and FTD fans and customers."[10] However, the tweets on this page are all Applicant's responses to customer comments; although each entry is marked "view conversation," no conversations are shown on the page, nor are any conversations provided.

An application initially based on Trademark Act Section 1(b) must, upon the filing of an allegation of use under Section 1(c) or a statement of use under Section 1(d), include one specimen showing the applied-for mark in use in commerce, on or in connection with those goods or services identified in the application, for each international class identified in the allegation or statement of use. Trademark Act Sections 1(c) and 1(d)(1), 15 U.S.C. §§ 1051(c) and 1051(d)(1); *see also* Trademark Rules 2.76(b)(2) and 2.88(b)(2), 37 CFR §§ 2.76(b)(2) and 2.88(b)(2). In the case of a service mark application, the specimen of use "must show the mark as used in the sale or advertising of the services." Trademark Rule 2.56(b)(2), 37 CFR § 2.56(b)(2).

Section § 904.07(a) of the TMEP directs the examining attorney to "review the specimen to determine whether ... the specimen shows use *for the specific goods/services identified*." (emphasis added). Thus, Applicant must show that the mark SAY IT YOUR WAY is being used to identify the services of "creating

---

[10] January 18, 2015 Response to Office Action at 1. We have not reproduced pages 4-7 herein.

an on-line community for registered users to participate in discussions, get feedback from their peers, form communities, and engage in social networking featuring information on flowers, floral products and gifts." *See, e.g., In re Graystone Consulting Assocs., Inc.*, 115 USPQ2d 2035, 2036 (TTAB 2015) ("A service mark must be 'used in such a manner that it would be readily perceived as identifying' the services, which is 'determined by examining the specimens of record in the application.'") (citing *In re Moody's Investors Serv. Inc.,* 13 USQP2d 2043, 2047 (TTAB 1989)); *In re Chengdu AOBI Info. Tech. Co.*, 111 USPQ2d 2080, 2082 (TTAB 2011) (specimens that show applicant was offering a product, not a service, cannot support service mark application); *In re Supply Guys Inc.,* 86 USPQ2d 1488, 1495 (TTAB 2008) (distributor of the products of others may not claim trademark use based on a display of those goods on its website; applicant's mark identified retail store services, not goods); *In re Monograms America Inc.*, 51 USPQ2d 1317, 1319 (TTAB 1999) (letterhead specimen failed to create an association between the mark MONOGRAMS AMERICA and the consultation services set forth in the application); TMEP § 1301.04(d) ("[R]egistration must be refused if the specimen shows the mark is used only to promote goods rather than the identified services, or the mark is used as a service mark but not for the identified services (i.e., the applicant misidentified the services).").

Service mark specimens consisting of advertising, promotional or informational material, such as website or Twitter pages, are routinely

submitted as advertising. Such specimens normally are acceptable when they show the mark in advertising the service(s) identified in the application, and create the required direct association by containing a reference to the specified service(s) as well as using the mark in such a way as to identify and distinguish the service(s) and source thereof. *In re Osmotica Holdings Corp.*, 95 USPQ2d 1666, 1668 (TTAB 2010). Specimens that make no reference to the identified service(s) may be accepted if they show the applicant using the mark in the course of rendering the service(s) identified in the application. *In re Metriplex, Inc.*, 23 USPQ2d 1315, 1316-17 (TTAB 1992) (indicating that a specimen that does not explicitly refer to the services may be acceptable if it "show[s] use of the mark in the rendering, i.e., sale, of the services"); *In re Red Robin Enters.*, 222 USPQ 911, 914 (TTAB 1984) (stating that "rendition" of services is properly viewed as an element of the "sale" of services). In such case, "there must be something which creates in the mind of the purchaser an association between the mark and the service activity." *In re Johnson Controls, Inc.*, 33 USPQ2d 1318, 1320 (TTAB 1994).

Here, the substitute specimen does not advertise or offer for sale the service of "creating an online community." Nor does it show that Applicant is rendering the applied-for Class 42 services under the mark SAY IT YOUR WAY. The first, second, and third pages of the substitute specimen, taken together, show only that Applicant is using the online community created by Twitter to provide information to its customers, to answer inquiries and

respond to complaints, and to advertise promotional events. But by participating in the online community created by Twitter, Applicant has not thereby created an online community that others can use in the same fashion, *i.e.*, Applicant does not provide a platform by which its followers can create a profile, establish a homepage, and attract further followers. We agree with the Examining Attorney that the substitute specimen shows that Applicant is simply acting to further the sale of its flowers, floral products and gifts by using its Twitter account to engage with consumers and potential consumers and promote its retail services. Twitter Inc. has created the online community for registered users to interact with each other via social networking, and Applicant's mark SAY IT YOUR WAY simply advertises Applicant's presence on the online community created by Twitter. Section 1301.04(h)(iv)(C) of the TMEP cautions examining attorneys to carefully scrutinize webpages from social-networking websites

> to ensure that the mark is properly associated with the identified services. Some applicants may mistakenly mischaracterize their services as 'social networking' because they assume that advertising or promoting their non-social-networking services via a social-networking website means they are providing social-networking services. For instance, an applicant may mistakenly file an application for 'online social-networking services' and provide a Facebook® webpage as a specimen when, in fact, they operate a pet store and are only using the Facebook® website to advertise the pet store and communicate information to and messages with actual and potential customers. Such a specimen is not acceptable for the social-

> networking services since it does not demonstrate that the applicant is providing these services.[11]

Applicant points to Twitter Inc.'s registration for the mark TWITTER for "providing an online community forum for registered users … to form virtual communities," and argues that Twitter Inc. has provided the forum within which Applicant has created its own virtual sub-community, and that it is the services of creating this sub-community which is covered by Applicant's application. We disagree with Applicant's contention that its mere presence on the Twitter platform amounts to the rendering of a separately registrable service. Applicant has not created a sub-community *forum*; to the extent that Applicant has carved out a smaller, online "community" of persons with an interest in flowers and related items, made up of its customers and prospective customers, Applicant has done nothing more than use the Twitter online community forum to engage in social-networking for its own benefit,[12] and to advertise its online retail store services, which are rendered over its own corporate website at http://www.ftd.com. *See In re Canadian Pacific Ltd.*, 754

---

[11] *See also* TMEP § 1301.04(h)(iii) ("Similarly, the applicant may be using social networking websites to advertise non-social networking services (e.g., operating a pet store) and communicate with customers, leading the applicant to misidentify the services as 'online social networking services' in Class 45.").

[12] Page seven of Applicant's substitute specimen is entitled "tweets with replies by FTD Flo…." On the page itself, only tweets originating from Applicant are displayed. This page does not evidence any social-networking conducted by Applicant for the benefit of someone else. It does not show any conversations, just Applicant's answers to questions or concerns presumably voiced by customers or prospective customers. Although there is a link to "view conversation," Applicant has not provided the page or pages of linked material that might show any conversations. And the specimen does not show people using Applicant's profile page to discuss or get feedback from their peers, form communities, or exchange information pertaining to flowers, floral products or gifts.

F.2d 992, 224 USPQ 971 (Fed. Cir. 1985); *IdeasOne Inc. v. Nationwide Better Health Inc.*, 89 USPQ2d 1952, 1954 n.4 (TTAB 2009) (to qualify as a separately registrable service, activity "must be qualitatively different from anything necessarily done in connection with the sale of the applicant's goods or the performance of another service").

Moreover, to the extent Applicant provides information regarding flowers (the "Q&A session") or conducts promotional events to promote the sale of its flowers (the annual Good Neighbor Day), such advertising and promotional activities do not, on this record, appear to constitute a separately registrable service, but are merely incidental to the production or sale of goods.[13] *In re Dr. Pepper Co.,* 836 F.2d 508, 5 USPQ2d 1207 (Fed. Cir. 1987) (running of promotional contests is not a registrable service since promotional activity is performed for benefit of seller); *In re Moore Bus. Forms Inc.*, 24 USPQ2d 1638 (TTAB 1992) (paper manufacturer that rates the recycled content and recyclability of its own products is merely providing information about its goods, not rendering a separate service to others); *see also In re Adver. & Mktg. Dev., Inc.,* 821 F.2d 614, 2 USPQ2d 2010 (Fed. Cir. 1987) (distinguishing advertising for services from actually providing advertising services); TMEP § 1301.01(b). *Cf. In re HSB Solomon Assocs.*, 102 USPQ2d 1269, 1274 (TTAB 2012) (CEI, an initialism for a "carbon emissions index," used only to identify

---

[13] There is also nothing in the record to suggest that the "Q&A session," which users are invited to join (shown on page two of the substitute specimen), fosters a dialogue or otherwise allows for communication among participants.

process by which applicant derives a particular measurement and not applied-for services).

We find that the substitute specimen fails to show use of the mark in association with the online community services listed in the application.

**Decision**:  The refusal to register Applicant's mark SAY IT YOUR WAY under Sections 1 and 45 is affirmed as to the services recited in International Class 42. Accordingly, because the examining attorney withdrew the refusal with respect to the services in International Class 35,[14] the application will proceed to publication for those services only, namely, "online retail store services featuring flowers and gifts, and promoting the retail services of member florists."

---

[14] *See* n.3 *supra.*