THIS ORDER IS A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

Ferrell

July 18, 2024

Opposition No. 91285851

*Blizzard Entertainment, Inc.*

*v.*

*Ava Labs, Inc.*

**Before Rogers, Chief Administrative Trademark Judge, and
Heasley and Elgin, Administrative Trademark Judges.**

**By the Board:**[1]

Blizzard Entertainment, Inc. ("Blizzard") has moved pursuant to Fed. R. Civ. P.

12(b)(6) to dismiss the counterclaims of Ava Labs, Inc. ("Ava") which seek cancellation

of Blizzard's Registration Nos. 3532348 and 3538516, because they allegedly fail to

state a claim upon which relief can be granted.[2] For reasons discussed below, we

---

[1] As part of an internal Board pilot citation program on broadening acceptable forms of legal citation in Board cases, citations in this order are in the form recommended in TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 101.03 (2024). This order cites decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals by the page(s) on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For decisions of the Board, this order employs some citations to the LEXIS legal database and cites only precedential decisions, unless otherwise specified. Practitioners should also adhere to the practice set forth in TBMP § 101.03.

[2] 16 TTABVUE. Citations to the Board record refer to TTABVUE, the Board's online docketing system. *See Turdin v. Trilobite, Ltd.,* Conc. Use No. 94002505, 2014 TTAB LEXIS 17, at *6 n.6 (TTAB 2014). The number preceding TTABVUE corresponds to the docket entry

construe the motion as one seeking partial judgment on the pleadings under Fed. R. Civ. P. 12(c). The motion is fully briefed.[3]

## I. Relevant Background

Blizzard owns Registration Nos. 3532348[4] and 3538516[5] on the Principal Register for, respectively, the standard character marks BLIZZARD and BLIZZARD ENTERTAINMENT, each for use in connection with "Electronic commerce services, namely, providing online retail store and mail order services, all featuring clothing, books, mouse pads, toys, games" in International Class 35 ("Blizzard's Registrations").

Blizzard pleaded, inter alia, Blizzard's Registrations in its opposition to Ava's Application Serial No. 97040451,[6] for the standard character mark BLIZZARD for use in connection with various business services and venture capital financing,

---

number, and any number following TTABVUE refers to the page number of the docket entry where the cited materials appear.

Submissions to the Board, including trial briefs, motions, responses, and replies, should use citations to the TTABVUE record created throughout the proceeding and during trial to facilitate the Board's review of the record throughout the proceeding and at final hearing. *See Made in Nature, LLC v. Pharmavite LLC*, Opp. No. 91223352, 2022 TTAB LEXIS 228, at *40-41 (TTAB 2022); TBMP § 801.03.

[3] *See* 18 TTABVUE (Ava's response); 19 TTABVUE (Blizzard's reply).

[4] The underlying application was filed on February 26, 2002, and the registration issued on November 11, 2008, under Trademark Act Section 1(a), 15 U.S.C. § 1051(a), with a claimed date of first use anywhere and first use in commerce at least as early as March 19, 1998. The registration was renewed on January 16, 2019.

[5] The underlying application was filed on February 26, 2002, and the registration issued on November 25, 2008, pursuant to Section 1(a), with a claimed date of first use anywhere and first use in commerce at least as early as March 19, 1998. The registration was renewed on January 16, 2019.

[6] 1 TTABVUE 2-3, 7-8.

investment, and fund management services, all in relation to the "crypto-asset and blockchain industries" in International Classes 35 and 36.[7]

With its answer to Blizzard's notice of opposition, Ava counterclaimed for cancellation of Blizzard's Registrations, asserting the following claims: (1) Blizzard's marks have never been used in commerce for the services listed,[8] and (2) Blizzard has abandoned its marks with respect to the specified services.[9]

On September 11, 2023, Blizzard filed its answer to the counterclaims and denied the salient allegations thereof.[10]

On February 23, 2024, Blizzard filed the instant construed motion for judgment on the pleadings.[11]

## II.    Construed Motion for Judgment on the Pleadings

Blizzard moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Ava's counterclaims because they allegedly fail to state a claim upon which relief can be granted.[12] A motion to dismiss under Fed. R. Civ. P. 12(b) for failure to state a claim upon which relief can be granted "must be made before pleading if a responsive pleading is

---

[7] The application was filed on September 22, 2021, under Trademark Act Section 1(b), 15 U.S.C. § 1051(b).

[8] *See* Trademark Act Section 14(6), 15 U.S.C. § 1064(6). The Board notes that Ava incorrectly cited 35 U.S.C. § 1064(6) in the body of its counterclaim, which the Board presumes is a typographical error. *Cadbury UK Ltd. v. Meenaxi Enter., Inc.*, 2015 TTAB LEXIS 292, *15 (TTAB 2015) (common sense and reason must be used when typographical error suspected).

[9] 4 TTABVUE 5-7.

[10] 6 TTABVUE.

[11] 16 TTABVUE.

[12] *See id.* at 2.

allowed." Nevertheless, as stated in the Board's suspension order,[13] when a motion to dismiss for failure to state a claim upon which relief can be granted is filed after the answer, but before the day of the deadline for plaintiff's pretrial disclosures, the Board may construe the motion as a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(h)(2)(B); *Internet Inc. v. Corp. for Nat'l Rsch. Initiatives*, Opp. No. 91091237, 1996 TTAB LEXIS 506, at *10 (TTAB 1996); *DAK Indus. Inc. v. Daiichi Kosho Co.*, Opp. No. 91085916, 1994 TTAB LEXIS 31, at *5-6 (TTAB 1994). Here, Blizzard filed its motion pursuant to Rule 12(b) after its answer to the counterclaims, but before the deadline for pretrial disclosures. Therefore, we construe Blizzard's motion as one for partial judgment on the pleadings. Fed. R. Civ. P. 12(h)(2)(B).

### A. Legal Standard

A motion for judgment on the pleadings is a test solely of the undisputed facts appearing in all the pleadings, supplemented by any facts of which the Board takes judicial notice. *See Media Online Inc. v. El Clasificado Inc.*, Can. No. 92047294, 2008 TTAB LEXIS 52, at *9-10 (TTAB 2008); *Ava Enters. v. PAC Trading Grp.*, Opp. No. 91175014, 2008 TTAB LEXIS 39, at *2-3 (TTAB 2008); *see also* TBMP § 504.02 and authorities cited therein. For purposes of the motion, all well-pleaded factual allegations of the non-moving party must be accepted as true, while those allegations of the moving party which have been denied (or which are taken as denied, pursuant to Fed. R. Civ. P. 8(b)(6), because no responsive pleading thereto is required or permitted) are deemed false. *Media Online*, 2008 TTAB LEXIS 52, at *10.

---

[13] *See* 17 TTABVUE 1 n.1.

Conclusions of law are not taken as admitted. *Id.* All reasonable inferences from the pleadings are drawn in favor of the nonmoving party. *Id.*; *Baroid Drilling Fluids, Inc. v. Sun Drilling Prods.*, Can. No. 92019865, 1992 TTAB LEXIS 6, at *4-5 (TTAB 1992).

Judgment on the pleadings may be granted only where, on the facts as deemed admitted, there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment on the substantive merits of the controversy as a matter of law. *Id.* Accordingly, a motion for judgment on the pleadings has utility when all the material allegations are admitted in the pleadings and only questions of law remain. *See Leeds Techs. Ltd. v. Topaz Commc'ns, Ltd.*, Opp. No. 91123449, 2002 TTAB LEXIS 441, at *5-6 (TTAB 2002); *CBS Inc. v. Mercandante*, Opp. No. 91085324, 1992 TTAB LEXIS 17, at *9-10 (TTAB 1992).

The standard for adjudicating a motion for judgment on the pleadings, when premised on the argument that the plaintiff failed to state a claim, is the same as that of a motion filed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *See W. Worldwide Enters. Grp. Inc. v. Qinqdao Brewery*, Can. No. 92017965, 1990 TTAB LEXIS 42, at *8-9 (TTAB 1990). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the tribunal to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Twombly*, 550 U.S. at 556-57. However, the plausibility standard does not require that a plaintiff

set forth detailed factual allegations. *Id.* Rather, a plaintiff need only allege "enough factual matter … to suggest that a claim is plausible" and "raise a right to relief above the speculative level." *Totes-Isotoner Corp. v. U.S.*, 594 F.3d 1346, 1354 (Fed. Cir. 2010). "For purposes of determining the motion, all of [Ava's] well-pleaded allegations must be accepted as true, and the [claims] must be construed in the light most favorable to [Ava]." *Petroleos Mexicanos v. Intermix SA*, Can. No. 92052292, 2010 TTAB LEXIS 442, at *3 (TTAB 2010).

### B. Ava's Claims and the Parties' Arguments

Both of Ava's claims are based on the allegation that the "online retail store and mail order services" identified in Blizzard's Registrations "were not performed to the order of, or for the benefit of, someone other than [Blizzard] or its predecessors and are not qualitatively different from anything necessarily done in connection with the sale of [Blizzard]'s or its predecessors' goods."[14] Thus, Ava concludes, because these activities are not "services" as defined by the Trademark Act, the specimens submitted with the statements and declarations of use for Blizzard's Registrations "do not show use as a service mark."[15] Accordingly, Ava alleges that (1) Blizzard has never used the mark in commerce "on or in connection with some or all of the services recited" in Blizzard's Registrations and (2) Blizzard has not used the marks identified in Blizzard's Registrations "in connection with some or all of the services identified therein for a period of at least three years and lacks intent to commence use or to

---

[14] 4 TTABVUE 5-6; 18 TTABVUE 6-10.

[15] 4 TTABVUE 5-6; 18 TTABVUE 9.

recommence use," and, therefore, Blizzard's Registrations are "subject to total or partial cancellation."[16]

Blizzard concedes, for purposes of its motion, that its services feature the sale of "only its own branded goods."[17] Nonetheless, Blizzard argues that there is no distinction between retail store services featuring one's own goods versus those featuring the goods of others: both are services as defined by the Trademark Act.[18] Additionally, Blizzard argues that, to the extent Ava's claims are based on alleged defects in Blizzard's specimens of use, this "is a matter to be addressed between the . . . . Examining Attorney and an applicant, and cannot form the foundation of a basis for attack in a later opposition or cancellation."[19] Accordingly, Blizzard concludes that its motion should be granted because Ava's claims fail as a matter of law.[20]

In response, in addition to its arguments regarding the definition of a "service," Ava argues that Blizzard's motion should be denied because Ava has sufficiently pleaded the elements of its counterclaims that Blizzard's marks have never been used and have been abandoned.[21]

---

[16] 4 TTABVUE 6-7.

[17] 16 TTABVUE 4.

[18] *Id.* at 3-5, 6-7.

[19] *Id.* at 6.

[20] 19 TTABVUE 2-5.

[21] 18 TTABVUE 3-10.

### C. Analysis and Decision

At bottom, the counterclaims and the dispute in the current motion center on whether, as a matter of law, online retail store or mail order activities featuring only a party's own goods are "services" as contemplated in the Trademark Act.[22] We start with Trademark Act Section 45, 15 U.S.C. § 1127, which defines "service mark" as follows:

> [A]ny word, name, symbol, or device, or any combination thereof—
>
> (1) used by a person, or
>
> (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this Act,
>
> to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown.

The Act defines "service mark," but fails to define "services." *In re Canadian Pac., Ltd.,* 754 F.2d 992, 994 (Fed. Cir. 1985). However, the following criteria have evolved for determining what constitutes a service: (1) a service must be a real activity; (2) a service must be performed to the order of, or for the benefit of, someone other than

---

[22] To be clear, Ava's allegations that the specimens submitted with Blizzard's statements of use do not show the mark in use in commerce in connection with the specified services support a nonuse claim, but insufficiency of a specimen by itself cannot form the basis of a claim in an inter partes dispute. *See Saint-Gobain Abrasives, Inc. v. Unova Indus. Automation Sys., Inc.*, Opp. No. 91150173, 2003 TTAB LEXIS 102, at *11 (TTAB 2003) ("It would be manifestly unfair to penalize defendant for non-compliance with a requirement that was never made by the Examining Attorney."); *Marshall Field & Co. v. Mrs. Fields Cookies*, Opp. No. 91078031, 1989 TTAB LEXIS 17, at *10-11 (TTAB 1989) ("The law is settled that the insufficiency of the specimens, per se, does not constitute grounds for cancelling a registration."); *Century 21 Real Estate Corp. v. Century Life of Am.*, Opp. No. 91075090, 1989 TTAB LEXIS 6, at *1-4 (TTAB 1989) (a plaintiff may not base a claim on purported error by the examining attorney reviewing an application).

the applicant; and (3) the activity performed must be qualitatively different from anything necessarily done in connection with the sale of the applicant's goods or the performance of another service. *Id.*; *In re Husqvarna AB*, Ser. No. 78899587, 2009 TTAB LEXIS 492, at *4-5 n.3 (TTAB 2009) (citing TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1301.01(a) (July 2009)); *Carefirst of Md., Inc. v. FirstHealth of the Carolinas, Inc.*, Opp. No. 91116355, 2005 TTAB LEXIS 600, at *33 (TTAB 2005) (citing *Canadian Pac.*, 754 F.2d 992).[23]

The parties focus their dispute on the meaning and application of the second and third criteria as applied to online retail store and mail order activities featuring one's own goods, namely, whether such activities are "to the order of, or for the benefit of,

---

[23] Prior to 2009, the TMEP set forth the criteria as follows: "(1) a service is the performance of some activity; (2) the activity must be for the benefit of someone other than the applicant; and (3) the activity must be recognizable as a separate activity, that is, it cannot be merely incidental or necessary to applicant's larger business." *See Husqvarna*, 2009 TTAB LEXIS 492, at *4-5. The Board in *Husqvarna* described the July 2009 change to the TMEP as a slight reformulation, but did not discuss whether the change had any significant legal ramifications. *See id.* at *4-5 n.3. Of note, the precedential decision *Carefirst of Md.*, which was issued in 2005, prior to the *Husqvarna* decision, contains the language that is now set forth in the TMEP as the reformulated criteria. *See* 2005 TTAB LEXIS 600, at *33. Later courts and the Board have cited to both the original and reformulated criteria interchangeably. *Compare Carrick-Harvest, LLC v. Veritas Farms, Inc.*, No. 20-CV-02017-RM-MEH, 2021 U.S. Dist. LEXIS 256911, at *12 (D. Colo. Jan. 25, 2021) (citing *In re Betz Paperchem, Inc.*, 1984 TTAB LEXIS 164, at *4 (TTAB 1984)) (original criteria); *Apple Inc. v. Appleton*, Opp. No. 91273129, 2023 TTAB LEXIS 532, at *29-30 (TTAB 2023) (not precedential) (citing *Husqvarna*, 2009 TTAB LEXIS 492, at *4-5) (original criteria); *In re CEM Corp.*, Ser. No. 85478855, 2014 TTAB LEXIS 405, at *17 (TTAB 2014) (not precedential) (citing *Betz Paperchem*, 1984 TTAB LEXIS 164, at *4) (original criteria) *with True Believers Ink 2, Corp. v. Russell Brands, LLC*, No. 4:18-CV-00432, 2020 U.S. Dist. LEXIS 77689, at *12-13 (E.D. Tex. May 4, 2020) (citing, inter alia, *Betz Paperchem*, 1984 TTAB LEXIS 164, at *4) (reformulated criteria); *Phoenix Entm't Partners, LLC v. Ryco Enters., LLC*, 306 F. Supp. 3d 1121, 1129 (E.D. Mo. 2018) (reformulated criteria); *IdeasOne, Inc. v. Nationwide Better Health, Inc.*, Can. No. 92049636, 2009 TTAB LEXIS 86, at *5-6 n.4 (TTAB 2009) (citing, inter alia, *Canadian Pac.*, 754 F.2d 992) (reformulated criteria).

someone other than the applicant" and are "qualitatively different from anything necessarily done in connection with the sale of the applicant's goods."[24]

With respect to the second criterion, the controlling question is who primarily benefits from the activity. If the activity is done primarily for the benefit of others, the fact that Blizzard also derives a benefit is not fatal. *See In re Venture Lending Assocs.*, Ser. No. 73402929, 1985 TTAB LEXIS 89, at *4-6 (TTAB 1985) (funds investment and providing capital for management is an activity that primarily benefits others even if applicant also derives some benefit from the performance thereof). On the other hand, if the activity primarily benefits the Blizzard, it is not a registrable service even if others derive some benefit. *In re Dr. Pepper Co.*, 836 F.2d 508, 510 (Fed. Cir. 1987) (contest promoting applicant's goods not a service, even though benefits accrue to winners of contest); *City Nat'l Bank v. OPGI Mgmt. GP Inc./Gestion OPGI Inc.*, Can. No. 92050730, 2013 TTAB LEXIS 189, at *26-32 (TTAB 2013) (finding that intranet website was used solely for internal purposes). In other words, when Blizzard is performing an activity primarily for its own benefit, we do not consider that activity to be a registrable service.

With respect to the third criterion, "[t]he fact that an activity is ancillary to a principal service or to the sale of goods does not in itself mean that it is not a separately registrable service." *Carefirst of Md.*, 2005 TTAB LEXIS 600, at *33 (citing *In re Universal Press Syndicate*, Ser. No. 73447294, 1986 TTAB LEXIS 128 (TTAB

---

[24] *See* 16 TTABVUE 3-5, 6-7; 18 TTABVUE 4-10. The parties do not appear to address whether Blizzard's activities are "real activities," and, thus, the Board construes this as a concession that the first criterion is satisfied.

1986) (licensing cartoon character found to be a separate service that was not necessary to larger business of providing a magazine and newspaper cartoon strip)). *See also In re John Breuner Co.*, Ser. No. 72064607, 1963 TTAB LEXIS 1 (TTAB 1963) (credit services provided by a retail store constitute a separate service, since extension of credit is neither mandatory nor required in the operation of a retail establishment). That Blizzard's primary commercial activity may be the manufacturing and sale of various goods bearing its marks does not mean that the online retail store and mail order activities featuring its own goods are not separate services. *See Carefirst of Md.*, 2005 TTAB LEXIS 600, at *33-34 ("Further, the fact that the activities are offered only to purchasers of the trademark owner's primary product or service does not necessarily mean that the activity is not a service.")

While at one time retail store activities were not considered services, it has long been recognized that gathering various products together, making a place available for purchasers to select goods, and providing any other necessary means for consummating purchases constitute the performance of a service. *See In re Supply Guys, Inc.*, Ser. No. 77027094, 2008 TTAB LEXIS 12, at *24-25 (TTAB 2008) ("Starting in about 1958, the Patent and Trademark Office began granting service mark registrations to retailers of merchandise for services such as 'retail grocery store services,' 'retail department store services,' and the like.") (quoting J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:47 (2007)); *Breuner*, 1963 TTAB LEXIS 1, at *4-5. To wit, the *International Classification of Goods and Services for the Purposes of the Registration of Marks*, 12th Edition (2024)

("Nice Classification"), explanatory note states that services classified in International Class 35 include

> the bringing together, for the benefit of others, of a variety of goods, excluding the transport thereof, **enabling customers to conveniently view and purchase those goods**; such services may be provided by retail stores, wholesale outlets, through vending machines, mail order catalogues or by means of electronic media, for example, through websites or television shopping programmes.

(Emphasis added).

Accordingly, such online retail store and mail order activities featuring one's own goods primarily benefit consumers in that the activity provides a central location to find, examine, and purchase various goods; and this is true even though the retailer derives the benefit of selling its own goods. Neither the Trademark Act nor authorities interpreting the Act distinguish between retail stores that sell products under the same brand name as the store and those that sell goods produced by and bearing the brands of others. *See Supply Guys*, 2008 TTAB LEXIS 12, at *26 ("Retail stores can sell products under their own brand name that is the same as the store's name or they can sell goods produced by others."). Furthermore, the Board has implicitly recognized that retail store activities featuring one's own goods are services, acknowledging that "if a retail store also uses the name of the store on the goods themselves, the same mark can serve both a trademark and service mark function." *Id.* (citing *Giant Food Inc. v. Rosso and Mastracco, Inc.*, Opp. No. 91060949, 1982 TTAB LEXIS 10, at *7-8 (TTAB 1982)).

After careful consideration of the parties' pleadings and drawing all reasonable inferences from the pleadings in favor of the nonmoving party, we find that Ava's

claims of nonuse and abandonment grounded on allegations that Blizzard's online retail store and mail order activities are not "services" as defined by the Trademark Act fail as a matter of law. *See, e.g., id.*

For the foregoing reasons, Blizzard's construed motion for partial judgment on the pleadings under Fed. R. Civ. P. 12(c) is **granted**, and Ava's counterclaims for cancellation of Blizzard's Registrations are hereby **dismissed**.

### III.    Proceedings Resumed; Dates Reset

Proceedings are **resumed** as to only Blizzard's notice of opposition. Dates are reset as follows:

| | |
|---|---|
| **Initial Disclosures Due** | **8/7/2024** |
| **Expert Disclosures Due** | **12/5/2024** |
| **Discovery Closes** | **1/4/2025** |
| **Plaintiff's Pretrial Disclosures Due** | **2/18/2025** |
| **Plaintiff's 30-day Trial Period Ends** | **4/4/2025** |
| **Defendant's Pretrial Disclosures Due** | **4/19/2025** |
| **Defendant's 30-day Trial Period Ends** | **6/3/2025** |
| **Plaintiff's Rebuttal Disclosures Due** | **6/18/2025** |
| **Plaintiff's 15-day Rebuttal Period Ends** | **7/18/2025** |
| **Plaintiff's Opening Brief Due** | **9/16/2025** |
| **Defendant's Brief Due** | **10/16/2025** |
| **Plaintiff's Reply Brief Due** | **10/31/2025** |
| **Request for Oral Hearing (optional) Due** | **11/10/2025** |

### IMPORTANT TRIAL AND BRIEFING INSTRUCTIONS

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in

Trademark Rules 2.121 through 2.125, 37 C.F.R. §§ 2.121-2.125. These include pretrial disclosures, the manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b), 37 C.F.R. §§ 2.128(a) and (b). Such briefs should utilize citations to the TTABVUE record created during trial, to facilitate the Board's review of the evidence at final hearing. *See* TBMP § 801.03. Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a), 37 C.F.R. § 2.129(a).